UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MANUEL RUGERIO-SERRANO and
HILDA JUAREZ,

         Plaintiffs,

 -v-

MAKITA USA, INC.,

         Defendant.

No. 16-CV-5391 (KMK)

OPINION & ORDER

Appearances:

Darren J. Epstein, Esq.
Darren Jay Epstein, Esq., P.C.
New York, NY
*Counsel for Plaintiffs*

Matthew Finkelstein, Esq.
London Fischer, LLP
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

  Plaintiffs Manuel Rugerio-Serrano ("Rugerio-Serrano") and his wife, Hilda Juarez ("Juarez," and collectively, "Plaintiffs"), bring this Action against Defendant Makita USA, Inc. ("Defendant") for damages sustained while using a saw designed, manufactured, and distributed by Defendant. Defendant removed the case to federal court, and Plaintiffs now bring a Motion To Remand (the "Motion"). (*See* Dkt. No. 12.) For the reasons to follow, Plaintiffs' Motion is denied.

I. Factual Background & Procedural History

  On or about October 22, 2012, while using the 5007F Makita Circular Saw "in accordance with its intended use and pursuant to the written instructions set forth on the

[product's] label," Rugerio-Serrano "was caused to suffer and sustain severe bodily injuries." (*See* Not. of Removal Ex. A ("Compl.") ¶ 20 (Dkt. No. 1).)  Plaintiffs aver that the safety guard for the saw's blade suddenly failed, causing the blade to impale Rugerio-Serrano's left arm from his wrist nearly to his elbow.  (*See* Pls.' Mot. for Remand & Incorporated Mem. of Law ("Pls.' Mem.") ¶ 1 (Dkt. No. 12).)  Rugerio-Serrano seeks damages in connection with these injuries. (*See* Compl. ¶¶ 24, 30, 33, 39.)  Juarez alleges that as a result of her husband's injuries, she will "forever be deprived of [the] society, services and consortium" of her husband, and seeks damages in compensation.  (*Id.* ¶¶ 41–42.)

Following Rugerio-Serrano's injury, Plaintiffs retained counsel and on July 21, 2014, sent a settlement package to Defendant, comprised of a police report, accident report, medical records, and photographs of the injury.  (*See* Pls.' Mem. ¶ 3; *see also* Pls.' Mot. for Remand & Incorporated Mem. of Law ("First Mot. To Remand") Ex. 3, at 1 (Dkt. No. 5).)  Plaintiffs also allege that their counsel "had conversations with . . . [D]efendant's legal counsel . . . indicat[ing] that this matter was worth well in excess of $75,000.00," (Pls.' Mem. ¶ 4), and that counsel for Plaintiffs "made a demand of at least $1,000,000," (*id.*).

Over a year later, on or about October 6, 2015, Plaintiffs filed a Complaint in New York State Supreme Court, alleging that Rugerio-Serrano's numerous permanent physical and psychological injuries resulted from Defendant's misconduct.  (*See* Compl. ¶¶ 21–22.) However, the Complaint did not contain an ad damnum clause identifying a specific amount in damages.  (*See generally id.*)[1]  On November 4, 2015, Defendant simultaneously filed its

---

[1] New York state law prohibits the inclusion of such an ad damnum clause in personal injury suits.  *See* N.Y. C.P.L.R. § 3017(c) ("In an action to recover damages for personal injuries . . . , the complaint . . . shall contain a prayer for general relief but shall not state the amount of damages to which the pleader deems himself entitled.").

2

Answer and a demand for an ad damnum pursuant to New York Civil Practice Law and Rules ("CPLR") § 3017(c). (*See* Not. of Removal Ex. C.) Plaintiffs filed their response to the ad damnum clause on June 27, 2016, seeking $4.5 million in damages. (*See* Not. of Removal Ex. D.)

On July 6, 2016, Defendant removed the Action to this Court pursuant to 28 U.S.C. § 1332(a). (*See* Not. of Removal.) On July 18, 2016, Plaintiffs filed a Motion To Remand, (*see* Pls.' First Mot. To Remand), which this Court denied the following day for failure to comply with the Court's Individual Practices. (*See* Memo Endorsement (July 19, 2016) (Dkt. No. 6).) The Court subsequently issued a Motion Scheduling Order, (*see* Order (Dkt. No. 11)), and Plaintiffs filed the instant Motion on October 9, 2016, (*see* Pls.' Mem.). On November 7, 2016, Defendant filed its opposition and accompanying papers, (*see* Dkt. Nos. 13–17), and on December 13, 2016, Plaintiffs filed their reply, (*see* Dkt. No. 19).

## II. Discussion

### A. General Principles

"'Federal courts are courts of limited jurisdiction' that 'possess only that power authorized by Constitution and statute.'" *Hendrickson v. United States*, 791 F.3d 354, 358 (2d Cir. 2015) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Among the limited categories of disputes over which a federal court may exercise jurisdiction are those "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C § 1332(a)(1). Where, as here, a case meets these requirements, but was nevertheless initiated in state court, it "may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending," at least if Congress

has not provided otherwise, 28 U.S.C. § 1441(a), and provided that the defendant in the diversity action is not a citizen of the state where the action was brought, *id.* § 1441(b)(2). "[I]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013) (internal quotation marks omitted); *see also Commonwealth Advisors Inc. v. Wells Fargo Bank, Nat'l Ass'n*, No. 15-CV-7834, 2016 WL 3542462, at *2 (S.D.N.Y. June 23, 2016) (same).

This right to removal, however, has a shelf life, and, where the action has been pending for a year or less, *see* 28 U.S.C. § 1446(c)(1), the notice of removal is to be "filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable," *id.* § 1446(b)(3). Where, as here, "the case stated by the initial pleading [was] not removable solely because the amount in controversy [did] not exceed" $75,000, "information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3)." *Id.* § 1446(c)(3)(A).

If the defendant fails to file such a notice within this 30-day period, a plaintiff may subsequently move to remand the action to state court, provided that the motion is made within 30 days of the defendant's filing of the notice. *Id.* § 1447(c). Here, the question for the Court is whether some "other paper from which it may . . . be ascertained that the case is one which is . . . removable," *id.* § 1446(b)(3), started the clock early enough that those 30 days had lapsed by the time Defendant removed this Action to federal court.

B. Analysis

Plaintiffs contend "[D]efendant[] w[as] aware that . . . [P]laintiff[s] w[ere] alleging that the matter in controversy was worth well over $75,000.00 prior to and at the time they were served the . . . [C]omplaint, (Pls.' Mem. ¶ 5), because "[i]t [wa]s clear from the medical records, photographs, authorizations and other information sent to . . . [D]efendant[] prior to the filing of the lawsuit that this matter was worth well over $75,000.00," (*id.* ¶ 3). Plaintiffs assert that in addition to the documentation listed above, "conversations with . . . [D]efendant's legal counsel" and "a settlement packet" would have similarly made Defendant aware that the amount in controversy was in excess of $75,000. (*Id.* ¶ 4.)[2] Defendant responds that pursuant to § 1446(b)(3) and Second Circuit precedent, "[t]he first 'paper' received by Defendant which stated that the amount in controversy exceed[ed] $75,000 was the [r]esponse to Defendant's demand for an [a]d [d]amnum." (Def.'s Mem. of Law in Opp'n to Pls.' Mot. To Remand 4 (Dkt. No. 16) (italics omitted).) The Court agrees with Defendant.

In *Moltner v. Starbucks Coffee Company*, the Second Circuit made clear that "the removal clock does not start to run until the plaintiff serves the defendant with a paper that *explicitly* specifies the amount of monetary damages sought." 624 F.3d 34, 38 (2d Cir. 2010) (per curiam) (emphasis added); *see also id.* ("[T]he time for removal runs from the service of the first paper *stating on its face* the amount of damages sought." (emphasis added)); *Suttlehan v. MidFirst Bank*, 205 F. Supp. 3d 366, 372 (S.D.N.Y. 2016) ("[T]o genuflect to the strength of

---

[2] Plaintiffs also appear to suggest that the very nature of the claims would have made Defendant aware that Plaintiffs' "injuries are worth well in excess of $75,000.00." (Pls.' Mem. ¶ 23; *see also id.* ¶ 24 ("The injuries were and are so severe that . . . [D]efendant[] knew there was no question that the amount demanded on this case would be in excess of $75,000.00").)

5

[the] [p]laintiffs' factual argument rather than insist on a statement of the amount in controversy in a writing as required by the text of the rule would subvert the clear effort of the Second Circuit and numerous courts to subjugate the § 1446(b) clock to an easily applied, predictable, bright-line rule."); *Santamaria v. Krupa*, No. 15-CV-6259, 2015 WL 6760140, at *3 (E.D.N.Y. Nov. 5, 2015) (concluding that "the 'removal clock' never began to run" where "the [c]ourt . . . conclude[d] that [the] [p]laintiffs [did] not serve[] [the] [d]efendants with any paper that specifie[d] the amount of damages sought"); *Salinas v. Mirfakhraie*, No. 12-CV-4483, 2012 WL 3642419, at *1 (S.D.N.Y. Aug. 24, 2012) (finding "[the plaintiffs' other] 'papers . . . explicitly specify the amount of monetary damages' sought by the plaintiff as required by the Second Circuit").

Plaintiffs' proffered case law stating otherwise is unhelpful. Among the factors Plaintiffs claim as sufficient to trigger the 30-day clock are the defendant's "kn[o]w[ledge] of possible grounds for removal," (Pls.' Mem. ¶ 13), the "serious and permanent nature of . . . alleged injuries mak[ing] it readily apparent . . . that damages could easily exceed $75,000," (*id.* ¶ 15), and the "complaint ma[king] it more likely than not that [the] case would exceed [the] jurisdictional threshold for diversity jurisdiction," (*id.* ¶ 17). None of these has been adopted by the Second Circuit and to the extent such factors involve the knowledge of the defendant in establishing the grounds for removal, the Second Circuit has rejected this approach. *See Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 143 (2d Cir. 2014) (noting that in *Moltner*, the Second Circuit "dr[ew] a bright line rule requiring service of a document explicitly stating the amount in controversy to trigger either 30-day period in 28 U.S.C. § 1446(b)"). To the extent Plaintiffs cite cases discussing a "reasonable probability" or "preponderance of the evidence" standard, (*see* Pls.' Mem. ¶ 18 (italics omitted) (citing *Gilman v. BHC Secs., Inc.*, 104 F.3d 1418,

6

1421 (2d Cir. 1997)); *United Food & Comm. Workers Union v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 303–04 (2d Cir. 1994)), these cases predate *Moltner*.

Plaintiffs' reliance on the disclosure of medical records or bills to Defendant as support for their position that Defendant was aware that the amount in controversy exceeded $75,000 is unavailing. Courts in the Second Circuit repeatedly have held that medical records are typically insufficient to establish the required jurisdictional amount. *See, e.g.*, *Steele v. Charles George Cos.*, No. 15-CV-281, 2015 WL 2069895, at *2 (S.D.N.Y. Apr. 27, 2015) (holding that medical records are insufficient when 12 out of 103 pages of records contained dollar figures); *Kunstenaar v. Hertz Vehicles, LLC*, No. 14-CV-1101, 2014 WL 1485843, at *2 (S.D.N.Y. Apr. 14, 2014) (noting that "an oblique reference to medical bills, standing alone, is not the explicit statement of 'monetary damages sought' required by the Second Circuit" (citing *Moltner*, 624 F.3d at 35)); *Salinas*, 2012 WL 3642419, at *1–2 (denying motion to remand where the plaintiff argued the medical records "reflected that the amount in dispute on this matter [wa]s in excess of $75,000" and citing *Moltner*); *Noguera v. Bedard*, No. 11-CV-4893, 2011 WL 5117598, at *1 (E.D.N.Y. Oct. 26, 2011) (finding that the amount in controversy could not be based on general allegations of severe and permanent injuries and citing *Moltner*); *Battaglia v. Penske Truck Leasing Co., L.P.*, No. 08-CV-2623, 2008 WL 2946009, at *2 (E.D.N.Y. July 29, 2008) ("Although this [c]ourt may consider the medical records . . . and infer that plaintiff may seek a substantial recovery, this information is insufficient to demonstrate that the amount in controversy exceeds $75,000." (citation omitted)). Thus, Rugerio-Serrano's medical records are insufficient to establish removability.

Additionally, "discussions" between legal counsel, Plaintiffs' counsel's "*recollection* of the conversation [he] had," or his "*belie[f]*" as to the nature of demands, likewise do not qualify

as "other paper" for the purposes of § 1446(b)(3). (Pls.' Mem. ¶ 4 (emphasis added).) *See, e.g., Quintana v. Werner Enters., Inc.*, No. 09-CV-7771, 2009 WL 3756334, at *1 (S.D.N.Y. Nov. 2, 2009) ("Under [§] 1446(b) . . . , an oral assertion is insufficient to start the 30-day clock for a defendant's removal petition, as the text of the statute refers to a pleading, motion, order, 'or other paper.'"); *see also* 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3731 (4th ed. 2008) ("Courts ordinarily hold that oral statements do not trigger removability under the second paragraph of [§] 1446(b)(3) because such statements do not qualify as an 'other paper.'").

Simply put, Plaintiffs' arguments are foreclosed by Second Circuit precedent. And while Plaintiffs may disagree with the level of precision required of a plaintiff to identify the amount in controversy and thus trigger the 30-day removal clock, the Court notes that "a bright line rule is preferable to the uncertainties faced by defendants in determining removability." *Cutrone*, 749 F.3d at 145 (internal quotation marks omitted)).

### III. Conclusion

For the foregoing reasons, Plaintiffs' Motion To Remand is denied. The Clerk of Court is respectfully requested to terminate the pending Motion. (*See* Dkt. No. 12.)

SO ORDERED.

DATED: May 24, 2017
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE